Philenia **HALL**, Petitioner,

v.

Gertrude **DUKE**, Respondent.

Supreme Court of Tennessee.

July 22, 1974.

L. Dean Moore, and Jon E. Jones, Cookeville, for petitioner.

T. Eugene Jared, and James D. Madewell, Cookeville, for respondent.

## OPINION

W. M. LEECH, Special Justice.

This is a tort action that arose as the result of the plaintiff breaking her foot when the porch swing belonging to the defendant accidently fell on it. The case was tried before a jury in the Putnam County Circuit Court. At the conclusion of the plaintiff's proof and again at the conclusion of all the proof, defendant moved for a directed verdict. In each instance the motion was overruled. Subsequently the cause was submitted to the jury and they returned a verdict in favor of the plaintiff in the amount of $2,500.00. As a result of said verdict, defendant filed

a motion for a new trial which was denied. An appeal was then taken to the Court of Appeals contending in part that as a matter of law the plaintiff was a social guest, therefore; since there was no evidence that the defendant was grossly negligent the trial court erred in not directing the verdict in favor of the defendant. The Court of Appeals sustained the trial court, holding that the plaintiff was an invitee to whom the defendant owed a duty of ordinary care, therefore; since there was proof that defendant negligently maintained her porch swing there was no error. Thereupon, defendant petitioned this Court for the Writ of Certiorari which we granted.

The sole issue before this Court is whether plaintiff, Gertrude Duke, was a social guest or licensee, who can not recover herein, or an invitee, who can.

A brief review of the facts will be helpful in resolving the foregoing issue: The parties were widows and close neighbors, living in Silver Point, Tennessee. They lived alone and visited and ate together often. On this occasion the defendant invited the plaintiff to come over and have supper and visit with her sister-in-law while she went to Wednesday evening church service. Plaintiff says she was invited over "to stay with Mrs. Smith," the sister-in-law. In any event, she went, ate supper, and then went out on the porch and sat on a porch swing next to Mrs. Smith. After about an hour, during which they looked at a Sears-Roebuck Catalog, the chain at plaintiff's end of the swing broke and the swing fell on her foot and ankle, injuring it.

■ Essentially, the case turned at the trial and in the Court of Appeals on the two ways of stating the invitation: "Come over and have supper and visit," or "Come over and have supper and stay with Hattie while I go to church." Both the trial court and the Court of Appeals held that the latter invitation made the defendant liable even though it was between life-long friends who were constantly in each other's homes; which were separated by only a small vacant lot. The thinking was that this invitation met the test laid down in Roberts v. Tennessee Wesleyan College, 60 Tenn.App. 624, 450 S.W.2d 21 (1969), as follows:

"The tenor of decisions of the courts of this state has been to require a person, in order to be classed as an invitee with the attendant protection, to go on premises in the interest of or for the benefit, real or supposed, of the occupant, or in the matter of mutual interest, or in the usual course of business, or be on the premises in the performance of an official duty."

However, this Court does not agree. We reach this conclusion in part because Hattie Smith was in good health having no physical infirmities which would require anyone's attention. Moreover, Silver Point is a small rural community relatively free from crime, with no proof of any endemic violence. The church was in sight of defendant's home. So, the only possible "benefit" to defendant was the same social benefit anyone enjoys when social favor is done; without "benefit" even being thought of by either party at the time.

The disagreement between this Court and the Court of Appeals results from the ambiguous phrase "to go on premises in the interest of or for the benefit, real or supposed, of the occupant, or in the matter of mutual interest, or in the usual course of business, or be on the premises in the performance of an official duty." In order to clarify this ambiguity, it will be helpful to examine the per curium opinion of Walker v. Williams, 215 Tenn. 195, 384 S.W.2d 447 (1964), wherein we said:

"A social guest is not in law an invitee but is a licensee to whom the owner owes no duty except to refrain from willfully injuring him or from committing negligence so gross as to amount to willfulness, or from leading him into a trap."

In reaching this holding, The American Law Institute Restatement of Torts, Section 331 was cited as authority. Therefore, to help determine what makes one an invitee, as opposed to a social guest or licensee, we will examine the Restatement (Second) of Torts, §§ 330–31 (1965).

Section 330 defines a licensee as follows:

"A licensee is a person who is privileged to enter or remain on land only by virtue of the possessor's consent."

In the comment following this definition, the persons included within this classification, among others, are specified as follows:

"1. One whose presence upon the land is solely for his own purposes, in which the possessor has no interest, and to whom the privilege of entering is extended as a mere personal favor to the individual, whether by express or tacit consent or as a matter of general or local custom.

2. The members of the possessor's household, except boarders or paying guests and servants, who, as stated in § 332, Comments i and j, are invitees.

3. Social guests. Some confusion has resulted from the fact that, although a social guest normally is invited, and even urged to come, he is not an "invitee," within the legal meaning of that term, as stated in § 332. *He does not come as a member of the public upon premises held open to the public for that purpose, and he does not enter for a purpose directly or indirectly connected with business dealings with the possessor. The use of the premises is extended to him merely as a personal favor to him.* The explanation usually given by the courts for the classification of social guests as licensees is that there is a common understanding that the guest is expected to take the premises as the possessor himself uses them, and does not expect and is not entitled to expect that they will be pre-

pared for his reception, or that precautions will be taken for his safety, in any manner in which the possessor does not prepare or take precautions for his own safety, or that of the members of his family. This has not gone without criticism, and an undercurrent of dissent, based upon the contention that it is not in accord with modern social custom and understanding when a guest is invited; but the decisions thus far have been all but unanimous to the effect that the social guest is no more than a licensee." (Emphasis added).

Restatement (Second) of Torts, Comment h at 175 (1965).

The foregoing is in accord with our holding in the *Williams* case, *supra.*

The Restatement (Second) of Torts goes on to define an invitee in section 332. Therein the following definition is found:

"(1) An invitee is either a public or a business visitor.

(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.

(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land."

Following this definition Comment a states that:

"'Invitee' is a word of art, with a special meaning in the law. This meaning is more limited than that of 'invitation' in the popular sense, and not all of those who are invited to enter upon land are invitees. *A social guest may be cordially invited, and strongly urged to come, but he is not an invitee. (See § 300, Comment h.) Invitees are limited to those persons who enter or remain on land upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has*

*been used to prepare the premises, and make them safe for their reception. Such persons fall generally into classes: (1) those who enter as members of the public for a purpose for which the land is held open to the public; and (2) those who enter for a purpose connected with the business of the possessor.* The second class are sometimes called business visitors; and a business visitor is merely one kind of invitee. There are many visitors, such as customers in shops, who may be placed in either class." (Emphasis added).

■ With sections 331, 332 and the quoted comments in mind, we conclude that in this jurisdiction in order to find that a person is an invitee, said person must be on the owner's land for either a public or business purpose.

■ Under this holding one can be an invitee even though no pecuniary benefit is to be found. The key test under this holding is whether the person is invited to transact business or to do work with the implied or expressed assurance that the place is prepared and safe for him. If, however, one is on private premises not normally open to the public, to volunteer assistance, although said assistance confers benefit, he is to be treated as a licensee, *unless the circumstances indicate that he could reasonably expect protection in return for the services.*

In the instant case, it is clear that the plaintiff did not come to the defendant's home for any public or business purpose. Moreover, there is not a scintilla of evidence in the record to show that the plaintiff reasonably expected any protection other than that which would have been afforded any member of the defendant's household.

■ The following quotation from W. Prosser, Law of Torts 378 (4th ed. 1971), fairly summarizes this Court's holding herein:

"Nearly all of the decisions are agreed that *a social guest, however cordially he may have been invited and urged to come, is not in law an invitee. . . . The guest is legally nothing more than a licensee,* to who the possessor owes no duty of inspection and affirmative care to make the premises safe for his visit. *The fact that in the course of his visit he gratuitously performs incidental services for his host, such as picking fruit, washing the dishes, or feeding the dog,* (or visits with a friend while the possessor is at church) *does not improve his legal position.* The reason usually given is that the guest understands when he comes that he is to be placed on the same footing as one of the family, and must take the premises as the occupier himself uses them, without any inspection or preparation for his safety; and that he also understands that he must take his chances as to any defective conditions unknown to the occupier, and is entitled at most to a warning of dangers that are known." (Emphasis added).

Having so held, it necessarily follows that both the Court of Appeals and the trial court were in error. It results, therefore, that this cause is reversed and remanded to the trial court for action consistent with this opinion.

DYER, C. J., and CHATTIN, McCANLESS and FONES, JJ., concur.

OPINION ON PETITION TO REHEAR

Respondent, Gertrude Duke, has filed an earnest petition to rehear wherein she contends, in part, that this Court has overlooked several prior Tennessee decisions, and as a result, said prior decisions were effectively overruled. Several cases are cited as overlooked, however, in fact only the case of Garis v. Eberling, 18 Tenn. App. 1, 71 S.W.2d 215 (1934), was not considered when we originally decided this case. Having studied the case, it is clear that it adds no new authority. In fact, the language used therein is remarkably simi-

lar to the language found in the cases previously cited to this Court. Moreover, Respondent makes no new argument based on *Eberling,* but merely reiterates her prior contentions. The foregoing is no basis for a petition to rehear. *See, e.g.,* Mitchell v. Garrett, 510 S.W.2d 894 (Tenn.1974).

Respondent further contends that the instant decision places this jurisdiction in the minority, in that we have adopted the "economic benefit" test. Respondent has apparently misconstrued our original opinion, and a careful reading of the opinion and authorities cited therein discloses that we did in fact apply the majority rule based upon the facts of this case.

In W. Prosser's, treatise, Law of Torts 386–87 (4th ed. 1971), the minority rule is succinctly examined and defined as follows:

"[The economic benefit theory], which has received approval from a number of legal writers, and was *adopted by the First Restatement of Torts,* is that the duty of affirmative care to make the premises safe is imposed upon the man in possession as the price he must pay for the economic benefit he derives, or expects to derive, from the presence of the visitor; and that when no such benefit is to be found, he is under no such duty. *On this basis the 'business' on which the visitor comes must be one of at least potential pecuniary profit to the possessor."* (Emphasis added).

We did not adopt the foregoing rule. In fact, we specifically stated that under our holding "one can be an invitee even though *no pecuniary benefit is to be found".* (Emphasis added). We also stated that "[t]he key test under this holding is whether the person is invited . . . with the implied or express assurance that the place is prepared and safe for him". These statements and our holding herein are in accord with "the great majority of the courts . . ." *See generally,* W. Prosser, Law of Torts 389 (4th ed. 1971). Moreover, the Second Restatement of

Torts § 330 et seq. which we adopted in this case, is in accord with this rule. *See,* W. Prosser, Law of Torts 391 (4th ed. 1971). It is therefore apparent that Respondent's contention, which stated that this Court by adopting the Second Restatement of Torts adopted the minority economics benefit rule, is erroneous.

It results, therefore; any previous cases notwithstanding, that we do not reverse our previous decision herein, but reaffirm said decision which is in accord with the majority of other jurisdictions.

The petition to rehear is denied.

DYER, C. J., and CHATTIN, McCANLESS and FONES, JJ., concur.