Imogene B. RANDALL and Harold E.
Reynolds, Plaintiffs/Appellants,

v.

Ben A. HANKINS, Superintendent, of the
Greeneville City Schools, and the
Greeneville City Board of Education,
Defendants/Appellees.

Supreme Court of Tennessee,
at Knoxville.

June 29, 1987.

Charles Hampton White, Nashville, for
plaintiffs-appellants.

N.R. Coleman, Jr., Greeneville, for de-
fendants-appellees.

## OPINION

HARBISON, Justice.

This case involves the right of tenured
teachers to preferential consideration for

reappointment following abolition of their positions pursuant to T.C.A. § 49–5–511(b)(3).

This is the second appeal of the case. The facts are set out in the opinion of the Court of Appeals in its initial review of the case, *Randall v. Hankins,* 675 S.W.2d 712 (Tenn.App.1984).

Appellants were tenured teachers in the Greeneville City School System, Mrs. Randall having taught for nine years and Mr. Reynolds for seventeen years before their positions were abolished by the city Board of Education at the end of the 1980–1981 school year.

It is important to note that there is no question as to the validity of this action of the Board or as to the *bona fides* of the abolition of the positions of appellants. T.C.A. § 49–5–511(b)(1) authorizes the dismissal of such teachers as may be necessary when a Board of Education is required to reduce the number of teaching positions in the system because of a decrease in enrollment or for other good reasons. There is no challenge to the reasons given by the Board for abolition in the present case, and this is a very important consideration in the disposition of this litigation. It has been urged on behalf of appellants that if a Board of Education did not properly and in good faith exercise its powers to eliminate positions, it could use that power to terminate tenured personnel improperly and without giving them the benefit of notice and the hearing which the tenure statutes require. T.C.A. §§ 49–5–512, –513. In this case there is neither an allegation nor a factual finding that any such circumvention of the tenure law occurred in connection with the initial dismissal of either of the appellants.

The positions of two other persons in addition to appellants were eliminated at the end of the 1980–81 school year because of a withdrawal of federal funding and a decline in enrollment. One of those persons was subsequently reemployed; the other resigned from the system. Appellants did not resign, however, and they have continuously held tenure in the Greeneville city system since their positions were eliminated. While both sought reemployment in other systems, they were unsuccessful. Both have continuously sought reemployment in the Greeneville city system, but, through the close of the record of the second hearing in this case in 1984, they had not been reemployed.

## A. *Prior Proceedings*

Appellants filed this suit against the Superintendent of Schools and the Board of Education on January 7, 1983, during the second school year following the abolition of their positions. The case was first tried in June 1983 and resulted in a judgment of dismissal entered on July 14, 1983. The Chancellor found that the Board of Education had accorded appellants such priorities as they were entitled to receive in connection with reemployment during the school year 1981–82 and the first part of the school year 1982–83.

This decision was reversed on the facts by the Court of Appeals in its first opinion, *Randall v. Hankins,* 675 S.W.2d 712 (Tenn.App.1984), that opinion being filed on April 24, 1984, near the end of the third school year following the original dismissal of appellants from the system.

In that opinion the Court of Appeals found that the evidence preponderated against the findings of the Chancellor. It found that the appellants had not been accorded priority in consideration for reemployment as required by the statute. It awarded back pay to each of them for the period during which their tenure rights had not been honored and directed that the Chancellor on remand enter an order requiring them to be reemployed to fill the first vacancies for which they were qualified.

It appears that while the case was pending in the Court of Appeals the Board of Education extensively revised its previous procedures in connection with a preferred list for reemployment and the evaluation of personnel on such list.

When the case came on for a second hearing before a different chancellor in November 1984, following remand from the Court of Appeals, an evidentiary hearing was conducted at the end of which the Chancellor found that the Board of Education had properly considered appellants for any position for which they were qualified under their respective certificates from and after June 1983. He also found that there was no vacancy in the system for which either appellant was qualified following their dismissal until near the end of the first year following such dismissal. He found that an opening occurred in March 1982 for which Mr. Reynolds was qualified, and another in August 1982 for which Mrs. Randall was qualified. He awarded back pay to each of appellants from those dates through June 1983 and admonished the Board of Education that the appellants must continue to remain on the preferred list for reemployment in the future. That judgment was entered on December 5, 1984.

Appellants again appealed to the Court of Appeals, which rendered its second opinion on October 25, 1985. It should be noted that the record in the second case closed at the time of the hearing on November 14, 1984, a few months after the regular employment of teachers for the 1984–1985 school year had been completed. The record before the Court of Appeals, therefore, and before this Court, goes only through that date and is silent as to any events subsequent thereto. Our consideration of the case, therefore, is necessarily limited to events occurring before November 14, 1984.

The same panel of judges who had considered the case on the first appeal also reviewed it on the second appeal. The court found that the priority rights of tenured personnel had not been accorded to appellants until August 1984, when hiring for the ensuing school year took place. It therefore modified the decree of the Chancellor, which had terminated back pay for appellants as of the end of June 1983, and

awarded back pay for an additional year, until August 23, 1984. The Board of Education has made no issue concerning the back pay award.

■ The Court of Appeals in its second opinion, however, found that with the revisions in procedure made following the first trial of the case as supplemented and implemented in the August 1984 hirings, the Board of Education had accorded to the appellants all priorities to which they were entitled. It found that the evidence did not preponderate against the findings of the Chancellor that no violation of the rights of either appellant had occurred following August 23, 1984 through the date of the second hearing on November 14, 1984. There is material evidence in the record to support that finding, so that with respect to the initial employment of personnel for the 1984–85 school year, there is a concurrent finding of fact that appellants were accorded their tenure rights. That concurrent finding is binding on this Court. T.C.A. § 27–1–113.

Appellants sought and were granted review here of the second opinion of the Court of Appeals. Their principal arguments are that the Court of Appeals failed to follow its own mandate from its original decision and that the evidence preponderates against the factual findings of that Court with respect to the August 1984 procedures employed by the Board.

■ We are unable to sustain either assignment. The same panel of the Court of Appeals heard both cases, and that panel is the best interpreter of its own mandate in the first opinion. The second issue is foreclosed by the concurrent findings of the Chancellor and the Court of Appeals.

B. *The Priority of Tenured Personnel*

Appellants insist that they are entitled to a peremptory order from this Court directing that they be reinstated immediately because there is a concurrent finding by the trial court and the Court of Appeals

that their priority as tenured personnel was not honored by the Board of Education for the three school years 1981–1982, 1982–1983 and 1983–1984.

As previously stated, it has now been established that there was no violation of the rights of appellants during most of the first year following abolition of their employment. The courts below have ordered full compensation to them through August 1984, when it is established by concurrent findings that they were properly considered for reemployment and were not at that time employed. Both courts below have also directed the Board of Education to continue to retain the names of appellants on the preferred list and to accord them priority of consideration by the Board of Education for any future positions for which they have certificates and are otherwise qualified.

The statute in question, T.C.A. § 49–5–511(b)(3) provides as follows:

"A tenure teacher who has been dismissed because of abolition of position shall be placed on a preferred list for reemployment in the first vacancy he is qualified by training and experience to fill, provided, however, nothing in this subsection shall be construed to deprive the board of the power to determine the fitness of such teacher for reemployment in such vacancy on the basis of the board's evaluation of such teacher's competence, compatibility, and suitability to properly discharge the duties required in such vacancy considered in the light of the best interest of the students in the school where the vacancy exists."

As pointed out by the Court of Appeals in its second opinion, the statute essentially falls into two parts. The first clause requires a tenured teacher dismissed because of abolition of position to be placed "on a preferred list for reemployment in the first vacancy he is qualified by training and experience to fill...."

Appellants correctly point out that the Board of Education of the Greeneville City Schools did not maintain such a written list during 1981 or 1982. Following the first trial of this case, however, the Superintendent caused such a formal written list to be prepared, and it has been continuously maintained since that time. The system is a relatively small one, with about 200 positions, and the list is not a lengthy one. Until they resign or otherwise lose their tenure, appellants are entitled to be retained on that list indefinitely and to be accorded priority of consideration by the Board of Education for any vacancy falling within the areas of their professional certifications and experience.

Unlike the statutes in several other jurisdictions cited by appellants, however, the Tennessee statute does not automatically require reinstatement in the first position for which former personnel have the necessary professional qualifications. The second part of the statute clearly provides that the Board of Education has authority to determine the fitness of the teacher for reemployment upon the basis of an evaluation by the Board itself of the teacher's competence, compatibility and suitability to discharge properly the duties in the vacant position, taking into consideration the best interests of the students in the school where the vacancy exists.

■ These provisions fall considerably short of a direct mandate to a Board of Education to grant automatic reemployment to any tenured individual. The Board is given discretion to consider a great number of factors. As pointed out by the Court of Appeals in its second opinion, tenured personnel must not only be placed upon a preferred list for consideration. They are accorded the following additional considerations:

"Moreover, the statute does not speak in relative terms; it does not direct the board to accord employment preference to the tenured teacher only if he is 'more qualified' than some competing applicant. Instead, the statute contemplates an objective measure of 'qualification' irrespective of a subjective impression that another applicant is 'more qualified'."

That is, while the Board must consider the competence, compatibility and suitability of the applicant for the vacant position in the particular school, the Board must find the individual applicant not "fit" or suited to that position. If the applicant is so suited, then he or she is entitled to priority over other persons who might be more qualified, if they do not also have tenure in the system.

The Court of Appeals in its second opinion found that the Board of Education had complied with these statutory provisions in connection with the August 1984 employment of personnel. The names of appellants appear in the minutes of the Board of Education following June 1983, but in the August 1984 minutes there are recitals as to the names and qualifications of the persons who were employed, together with comparisons of the appellants and the statement of reasons why they were not employed. The Chairman of the Board of Education testified that the Board itself made this decision, not the Superintendent. In making the decision the members of the Board were furnished with the applications and personnel data concerning the appellants, together with written evaluations of their applications made by the principals of the schools involved and central administrative personnel on the staff of the Superintendent.

One of the principal complaints of appellants in these proceedings has been that in the past the Board of Education had delegated to the Superintendent of Schools and his staff the employment of personnel, and the Board had simply ratified recommendations made by the Superintendent. T.C.A. § 49–5–511(b)(3) requires more. As held by the Court of Appeals, it requires that the Board itself, not the Superintendent, make the evaluation of preferred tenure personnel. If it does not reemploy them for positions for which they are ostensibly qualified, it must state reasons on the record, and its actions, of course, may be subject to appropriate judicial review.

Appellants insist that the Board of Education has cast the burden of proof upon them to establish their qualifications, whereas the burden of proof should rest upon the Board. We do not so construe the holding of the Court of Appeals or the proceedings below. Once a tenured person establishes by certification his or her professional qualifications for the open position and shows any other training or experience he or she may have, then that person is entitled to preferential consideration. If the Board is not to employ such a tenured person, it must demonstrate lack of individual fitness and state the reasons why, in its discretion, it did not honor the priority accorded to such personnel by statute.

As stated previously, we have no record of what may have occurred in the Greeneville city school system with respect to these appellants since August 1984. They have been directed to be fully compensated through that date for the failure of the Board of Education to accord them their statutory priority. They are, of course, automatically entitled to continue that priority, and if they contend that it has not been accorded in subsequent school years, they may bring appropriate action for further back pay. In our opinion, however, the Court on this record is not justified in entering a peremptory order of reinstatement.

Appellants rely heavily upon the decision of this Court in *State ex rel. Chapdelaine v. Torrence*, 532 S.W.2d 542 (Tenn.1975), *cert. denied*, 425 U.S. 953, 96 S.Ct. 1731, 48 L.Ed.2d 198 (1976). That case, however, did not arise under the statutes now under consideration. Further, it dealt with an alleged wrongful discharge and with priority in connection with the dismissal of tenured, as distinguished from untenured, personnel. As stated at the outset of this opinion, no issue has been raised concerning the original dismissal of these appellants by reason of abolition of their positions.

In oral argument counsel for appellants conceded that the Board of Education, at

least ostensibly, complied with the statutory provisions involved here in August 1984. Whether it continued to comply thereafter is a matter which cannot be determined from the present record. On the basis of this record, however, it is our opinion that the Court of Appeals correctly construed and applied the statutes in question. Its judgment is affirmed. Costs incident to the review of this case in this Court are taxed to appellants. All other costs are assessed to appellees, and the cause will be remanded to the Chancery Court in accordance with the mandate of the Court of Appeals, which directed incorporation therein of its mandate from the first appeal.

BROCK, C.J., FONES and DROWOTA, JJ., and BYERS, Special Justice, concur.